# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| **STATE OF INDIANA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:23-cv-13-HAB-SLC** |
| **v.** | ) | |
| | ) | **Removed from Allen** |
| **TIKTOK INC.,** | ) | **Superior Court, Ind.** |
| | ) | **Case No. 02D03-2212-PL-000401** |
| **and** | ) | |
| | ) | |
| **BYTEDANCE LTD.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

        A.      The State's Action.................................................................................. 2

        B.      Related Federal Proceedings................................................................. 3

III.    ARGUMENT ...................................................................................................... 6

        A.      The State's Claim Raises Disputed, Substantial Federal Issues Under
                *Grable*. .................................................................................................. 7

                1.      The Complaint "Necessarily Raises" Multiple Federal Issues. .................. 8

                2.      The Parties "Actually Dispute" The Federal Issues................................. 14

                3.      The Federal Issues Are Substantial......................................................... 15

                4.      Federal Jurisdiction Would Protect, Not Disturb, Federalism
                        Principles................................................................................................ 17

        B.      This Court Has Federal-Question Jurisdiction Because The State's Claim
                Arises, If At All, Under Federal Common Law.................................... 19

IV.     CONCLUSION................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Elec. Power Co., Inc. v. Connecticut,*
564 U.S. 410 (2011).................................................................2, 7, 19, 21

*Am. Ins. Ass'n v. Garamendi,*
539 U.S. 396 (2003)...............................................................11, 17, 19

*Bader Farms, Inc. v. Monsanto Co.,*
2017 WL 633815 (E.D. Mo. Feb. 16, 2017)..........................................10

*Banco Nacional de Cuba v. Sabbatino,*
376 U.S. 398 (1964)..............................................................................19

*Bennett v. Sw. Airlines Co.,*
484 F.3d 907 (7th Cir. 2007) ...............................................10, 13, 16

*BIW Deceived v. Loc. S6, Indus. Union of Marine & Shipbuilding Workers of
Am., IAMAW Dist. Lodge 4,*
132 F.3d 824 (1st Cir. 1997).................................................................13

*Boyle v. United Techs. Corp.,*
487 U.S. 500 (1988)........................................................... *passim*

*Broder v. Cablevision Sys. Corp.,*
418 F.3d 187 (2d Cir. 2005)...................................................................15

*City of New York v. Chevron Corp.,*
993 F.3d 81 (2d Cir. 2021).............................................................20, 22

*Crosby v. Nat'l Foreign Trade Council,*
530 U.S. 363 (2000)........................................................................11, 17

*Empire Healthchoice Assur., Inc. v. McVeigh,*
547 U.S. 677 (2006)..................................................................................7

*Erie R. Co. v. Tompkins,*
304 U.S. 64 (1938).................................................................................19

*Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.,*
776 F.3d 463 (7th Cir. 2015) ................................................................19

*FTC v. Am. Future Sys., Inc.,*
2021 WL 1721589 (E.D. Pa. Apr. 30, 2021)..........................................18

*FTC v. Quincy Bioscience Holding Co., Inc.,*
___ F. Supp. 3d. ___, 2022 WL 17905783 (S.D.N.Y. Dec. 19, 2022) ................................. 18

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
545 U.S. 308 (2005) ............................................................................................. *passim*

*Grynberg Prod. Corp. v. British Gas, p.l.c.,*
817 F. Supp. 1338 (E.D. Tex. 1993) ......................................................................... 16

*Gunn v. Minton,*
568 U.S. 251 (2013) ........................................................................................ 7, 14, 15

*Hines v. Davidowitz,*
312 U.S. 52 (1941) .......................................................................................... 12, 18

*LaBelle v. McGonagle,*
2008 WL 3842998 (D. Mass. Aug. 15, 2008) ............................................................ 13

*Marland v. Trump,*
498 F. Supp. 3d 624 (E.D. Pa. 2020) ......................................................................... 6

*McKay v. City & Cty. of San Francisco,*
2016 WL 7425927 (N.D. Cal. Dec. 23, 2016) ............................................................ 11

*McMahon v. Pres. Airways, Inc.,*
410 F. Supp. 2d 1189 (M.D. Fla. 2006) ..................................................................... 8

*MITE Corp. v. Dixon,*
633 F.2d 486 (7th Cir. 1980) ................................................................................... 8

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC,*
770 F.3d 1010 (2d Cir. 2014) ................................................................................... 18

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians,*
471 U.S. 845 (1985) ..................................................................................... 2, 7, 20, 21

*Nat'l Foreign Trade Council v. Natsios,*
181 F.3d 38 (1st Cir. 1999) ...................................................................................... 18

*In re Nat'l Sec. Agency Telecomms. Records Litig.,*
483 F. Supp. 2d 934 (N.D. Cal. 2007) ...................................................................... 16

*Native Vill. of Kivalina v. ExxonMobil Corp.,*
696 F.3d 849 (9th Cir. 2012) ................................................................................... 21

*New SD, Inc. v. Rockwell Intern. Corp.,*
79 F.3d 953 (9th Cir. 1996) ..................................................................................... 21

*Pacheco de Perez v. AT&T Co.*,
    139 F.3d 1368 (11th Cir. 1998) ...............................................................................15, 16

*Perpich v. Dep't of Defense*,
    496 U.S. 334 (1990).................................................................................................20

*Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*,
    559 F.3d 772 (8th Cir. 2009) ...........................................................................12, 13

*Peters v. Alaska Tr., LLC*,
    305 F. Supp. 3d 1019 (D. Alaska 2018) ................................................................10

*Qatar v. First Abu Dhabi Bank PJSC*,
    432 F. Supp. 3d 401 (S.D.N.Y. 2020).....................................................................15

*Republic of Iraq v. First Nat'l City Bank*,
    353 F.2d 47 (2d Cir. 1965)......................................................................................20

*Republic of Philippines v. Marcos*,
    806 F.2d 344 (2d Cir. 1986)...............................................................9, 10, 16, 17

*Rubin v. Coors Brewing Co.*,
    514 U.S. 476 (1995).................................................................................................16

*Scrogin v. Rolls-Royce Corp.*,
    2010 WL 3547706 (D. Conn. Aug. 16, 2010) ...................................................9, 14

*State of Indiana v. Startel Communication LLC*,
    2021 WL 4803899 (S.D. Ind. Oct. 14, 2021) ..................................................18, 24

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981)...........................................................................................19, 20

*TikTok Inc. v. Biden*,
    2021 WL 3082803 (D.C. Cir. July 14, 2021) ...........................................................6

*TikTok Inc. v. CFIUS*,
    No. 20-1444 (D.C. Cir. Dec. 20, 2022).......................................................4, 5, 11

*TikTok Inc. v. Trump*,
    490 F. Supp. 3d 73 (D.D.C. 2020) .....................................................................6, 12

*TikTok Inc. v. Trump*,
    507 F. Supp. 3d 92 (D.D.C. 2020) .....................................................................6, 12

*Torres v. S. Peru Copper Corp.*,
    113 F.3d 540 (5th Cir. 1997) ..................................................................................16

*United States v. Pappas*,
94 F.3d 795 (2d Cir. 1996)..................................................................20

*United States v. Pink*,
315 U.S. 203 (1942).............................................................................17

*Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*,
164 F.3d 123 (2d Cir. 1999)..................................................................21

*Zschernig v. Miller*,
389 U.S. 429 (1968).............................................................................17

*In re Zyprexa Prod. Liab. Litig.*,
2008 WL 398378 (E.D.N.Y. Feb. 12, 2008)........................................10

**Statutes**

28 U.S.C. § 1331 ................................................................................................21

50 U.S.C. §§ 1701–08 .............................................................................1, 5, 12

50 U.S.C. § 4565 ...................................................................................4, 5, 14, 18

Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5, *et seq.*......................3, 9

**Other Authorities**

Exec. Order No. 13,942, 85 Fed. Reg. 48637 ................................................5

Exec. Order No. 14,034, 86 Fed. Reg. 31423 ...............................................6

*Office of Investment Security; Guidance Concerning the National Security Review
Conducted by the Committee on Foreign Investment in the United States*, 73
Fed. Reg. 74567 (Dec. 8, 2008) ..........................................................10

*Regulations Pertaining to Mergers, Acquisitions, and Takeovers by Foreign
Persons*, 73 Fed. Reg. 70702 (Nov. 21, 2008)......................................10

*Securing the Information and Communications Technology and Services Supply
Chain*, 86 Fed. Reg. 4909-01 (Jan. 19, 2021) ......................................13

U.S. Dep't of Commerce, *Identification of Prohibited Transactions to Implement
Executive Order 13942*, 85 Fed. Reg. 60061 (Sept. 24, 2020) ................5

## I.     INTRODUCTION

The State's strained portrayal of this lawsuit as a "run-of-the-mill cause of action under state law," Mot. to Remand at 1 (ECF No. 18-1), ignores reality. It is, in fact, an extraordinary attempt to regulate sensitive issues of national security and foreign affairs—which at this very moment are under active consideration by the federal government—under the guise of an ill-fitting application of state consumer protection law. Federal jurisdiction exists and the State's motion to remand should be denied.[1]

In its remand motion, the State argues that this Court lacks jurisdiction because this case "does not require the resolution of any federal issue." Mot. to Remand at 6. But the State's core allegation is that Defendants have misled consumers about the risk that the Chinese Government may "access and exploit" TikTok user data "to, among other things, help develop artificial intelligence technologies and assist China in its espionage efforts." Compl. (ECF No. 6) ¶¶ 63, 107. To succeed on its claim, the State concedes that it must establish that TikTok user data may be accessed and exploited by the Chinese Government. Mot. to Remand at 6. Accordingly, the State's blithe assertion that this case "does not implicate any foreign-policy or national-security issues," *id.* at 1, cannot be squared with its own complaint and case theory.

Indeed, the very question that the State would have the state court decide—whether China is accessing and exploiting TikTok user data—is one that the U.S. government has been carefully evaluating through a formal review and investigation conducted by the Committee on Foreign Investment in the United States ("CFIUS") and pursuant to the President's authority under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*. Adjudicating

---

[1]     Defendants also are not subject to personal jurisdiction in Indiana. Defendants submit this opposition brief subject to, and without waiver of, this jurisdictional objection.

the State's claim would require a state court to second-guess the federal government's constitutionally assigned and statutorily dictated processes for determining the nature and degree of any national security threat from China vis-à-vis TikTok. Supplanting or interfering with the federal government's determinations regarding these important issues of national security and foreign affairs with a state court's judgment about the same issues under state consumer protection law necessarily raises disputed and substantial questions of federal law and is removable under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005).

Moreover, because the State's complaint implicates "uniquely federal interests" in national security and foreign affairs, it is governed by federal common law and removable on this basis as well. The State argues that this case does not involve "one of the limited subjects that arise under federal common law," Mot. to Remand at 1, but it is well established that federal courts may fashion federal common law in cases involving areas of "uniquely federal interests" that require a uniform approach, such as foreign affairs and national security. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988). Assessing whether U.S. user data is in fact at risk of exploitation by the Chinese Government cannot be done in a vacuum; "[a]s with other questions of national or international policy, informed assessment of competing interests is required." *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 427 (2011). Because federal courts have original jurisdiction over "claims founded upon federal common law," removal was proper. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985).

## II.    BACKGROUND

### A.    The State's Action

The State of Indiana filed this action in Indiana state court on December 7, 2022. The complaint alleges that Defendants are misleading Indiana consumers about the risk that the Chinese Government may access and exploit their data from TikTok, a platform on which users

create and share videos. Compl. ¶¶ 8, 19, 36, 218. By creating an account, TikTok users in the United States accept the terms of TikTok Inc.'s U.S. privacy policy, which states that the company "may share all of the information [it] collect[s] with a parent, subsidiary, or other affiliate of our corporate group." *Id.* ¶¶ 10, 50. The complaint alleges that TikTok Inc.'s U.S. privacy policy is misleading because it "does not alert Indiana consumers to the ability of TikTok to share their data with individuals or entities located in China, or for individuals or entities located in China to access that data." *Id.* ¶ 150. Specifically, the complaint alleges that TikTok Inc. has deceptively failed to disclose that its parent company, ByteDance, is located in China and is subject to Chinese law. *Id.* ¶¶ 12–14, 53. The complaint further alleges that "TikTok deceives and misleads Indiana consumers when it claims that it is independent from ByteDance." *Id.* ¶ 229.

On the basis of these allegations, the complaint asserts a claim under the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5, *et seq*. The complaint seeks as relief a declaration that "TikTok's actions are unfair, abusive, and deceptive to Indiana consumers," Prayer for Relief A; a permanent injunction "to compel TikTok to cease its deceptive and misleading statements about the risk of access to and exploitation of consumers' data by the Chinese Government and/or Chinese Communist Party," Compl. ¶ 24, Prayer for Relief B; and civil penalties, Compl. ¶ 25, Prayer for Relief C–D. On January 6, 2023, Defendants removed this case to federal court, and the State filed a motion to remand on February 3, 2023. ECF Nos. 1, 18.

## B.    Related Federal Proceedings

As Defendants explained in their Notice of Removal, the federal government has been conducting a years-long investigation of the purported risk of Chinese access to U.S. TikTok user data through the Committee on Foreign Investment in the United States ("CFIUS"). CFIUS is an interagency committee of the executive branch tasked with reviewing certain covered transactions that are foreign acquisitions of U.S. businesses to determine their impact on national security. *See*

50 U.S.C. § 4565. CFIUS is empowered to address identified national security risks by imposing or otherwise reaching agreement with the transaction parties on conditions to address national security concerns. *Id.* If the risks to a particular covered transaction cannot be mitigated, the President is empowered to prohibit the transaction. *Id.*

In 2019, Defendant ByteDance Ltd. ("ByteDance") was notified that CFIUS was considering whether to review a 2017 acquisition by ByteDance of Musical.ly, a China-headquartered company that distributed a video-sharing application also called Musical.ly. CFIUS has sought to review the TikTok business in connection with that acquisition. Since 2019, Defendants have proposed a number of strategies to mitigate any purported national security risks around TikTok's U.S. user data. Indeed, Defendants have already begun the implementation of these solutions, which include isolating U.S. user data under the control of a special U.S. subsidiary and in the cloud environment maintained by Oracle Corporation. Defendants remain in discussions with the U.S. government regarding this implementation and other safeguards. *See* Status Report, *TikTok Inc. v. CFIUS*, No. 20-1444 (D.C. Cir. Dec. 20, 2022) (explaining that the U.S. government and Defendants "continue to be involved in ongoing negotiations to determine" whether any national security concerns related to Defendants' data management practices "may be resolved by mutual agreement").

Although the Defendants remain in negotiations with CFIUS to resolve the federal government's national-security concerns, Defendants and CFIUS have also been in litigation since 2020. On July 30, 2020, CFIUS rejected ByteDance's prior mitigation proposals and referred the matter to the President. On August 14, 2020, President Trump issued an order requiring ByteDance to divest itself of TikTok Inc. This order—and the related CFIUS proceedings—are subject to a pending petition for review in the U.S. Court of Appeals for the District of Columbia Circuit,

which has original and exclusive jurisdiction to hear challenges to CFIUS proceedings and orders, 50 U.S.C. § 4565(e)(2). In February 2021, the court granted the parties' joint motion to hold the case in abeyance to give the new administration time to evaluate the matter. Clerk's Order, *TikTok Inc. v. CFIUS*, No. 20-1444 (D.C. Cir. Feb. 19, 2021). Since then, Defendants and CFIUS have continued to negotiate a mitigation solution acceptable to all parties, and Defendants have been proceeding to implement significant changes to the handling of U.S. user data, including with its June 2022 announcement, quoted in the complaint, that "100% of US user traffic is now being routed to Oracle cloud infrastructure" in the United States. Compl. ¶ 117.

The ongoing CFIUS review is not the only federal statute pertaining to national security that has been invoked by the federal government against Defendants. Also in 2020, the U.S. government attempted to use the Executive's authority under IEEPA, 50 U.S.C. §§ 1701–08, to ban the TikTok application based on the same purported data security concerns that make up the bulk of the complaint in this case. Specifically, on August 6, 2020, President Trump issued an executive order entitled "Addressing the Threat Posed by TikTok," which purported to prohibit "any transaction" by "any person, or with respect to any property, subject to the jurisdiction of the United States," with Defendants. Exec. Order No. 13,942, 85 Fed. Reg. 48637. The order asserted—without evidentiary support—that ByteDance's ownership of TikTok Inc. could allow China to access and misuse U.S. user data, and that the Chinese Government may censor or use TikTok content for propaganda purposes.

In September 2020, the U.S. Secretary of Commerce issued a list of prohibited transactions to implement the President's IEEPA executive order. U.S. Dep't of Commerce, *Identification of Prohibited Transactions to Implement Executive Order 13942 and Address the Threat Posed by*

*TikTok and the National Emergency with Respect to the Information and Communications Technology and Services Supply Chain*, 85 Fed. Reg. 60061, 60062 (Sept. 24, 2020).

By orders dated September 27, 2020, and December 7, 2020, however, the U.S. District Court for the District of Columbia entered two preliminary injunctions preventing those prohibitions from going into effect. *See TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 76 (D.D.C. 2020); *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 96 (D.D.C. 2020); *see also Marland v. Trump*, 498 F. Supp. 3d 624, 643–44 (E.D. Pa. 2020) (entering nationwide injunction against Commerce Department prohibitions).

The President withdrew the August 6, 2020, order on June 9, 2021. Exec. Order No. 14,034, 86 Fed. Reg. 31423. On July 14, 2021, the D.C. Circuit granted the federal government's motion to voluntarily dismiss the government's appeal of those decisions. *See TikTok Inc. v. Biden*, No. 20-5381, 2021 WL 3082803 (D.C. Cir. July 14, 2021).

## III.   ARGUMENT

Removal of this case from Indiana state court was proper for two independent and alternative reasons.

First, the action is removable under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), because it necessarily raises disputed and substantial questions of federal law. The State argues that "this case lacks the predicate for even applying *Grable*: a 'federal issue,'" Mot. to Remand at 3, but this ignores an essential element the State must prove to succeed on its claim: the falsity of Defendants' alleged statements about the Chinese Government's access to TikTok user data and ability to exploit that user data. In light of the centrality of this issue to the State's case, the State's assertion that "this suit does not implicate any foreign-policy or national-security issues," *id.* at 1, is not credible.

6

Second, the State's claim implicates "uniquely federal interests" in national security and foreign affairs and therefore is governed by federal common law. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985); *see Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988). The State argues that federal jurisdiction "derives from federal statutes and is limited to those subjects encompassed within a statutory grant of jurisdiction," and this case does not involve "one of the limited subjects that arise under federal common law." Mot. to Remand at 1, 11. But it is well established that federal courts may "fill in statutory interstices, and, if necessary, even fashion federal law," in cases like this one that involve core federal interests such as foreign affairs and national security. *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 421 (2011) (internal quotation marks omitted).

Accordingly, federal jurisdiction exists and the State's motion to remand should be denied.

A.    **The State's Claim Raises Disputed, Substantial Federal Issues Under *Grable*.**

The Supreme Court has "recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312. Under *Grable*, a federal court has jurisdiction over a state law claim "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 313–14).

Although the Supreme Court has repeatedly reaffirmed the viability of this "special and small category" of cases in which federal jurisdiction arises from a state law claim, *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006), there is no "single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." *Grable*, 545 U.S. at 314 (quotation marks omitted); *see also Gunn*, 568 U.S. at 258 ("In outlining the contours of this slim category, we do not paint on a blank canvas.

7

Unfortunately, the canvas looks like one that Jackson Pollock got to first."). Instead, determining whether the *Grable* factors are present "calls for a 'common-sense accommodation of judgment to [the] kaleidoscopic situations' that present a federal issue." *Grable*, 545 U.S. at 312–13 (alterations in original) (quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 117 (1936)); *see also* R.H. Fallon, Jr. et al., Hart & Wechsler's The Federal Courts & the Federal System 832 (7th ed. 2015) (under *Grable*, the court exercises discretion "to tailor jurisdiction to the practical needs of the particular situation").

Here, contrary to the State's assertions, the complaint necessarily raises disputed and substantial federal issues, and adjudicating the State's claim would not disrupt the federal-state balance. Accordingly, federal jurisdiction is proper.

1. *The Complaint "Necessarily Raises" Multiple Federal Issues.*

The State argues that "this case lacks the predicate for even applying *Grable*: a 'federal issue.'" Mot. to Remand at 3. Yet the State ignores the multitude of federal issues necessarily raised by the complaint, including the federal issue at the very heart of the State's claim: its theory of liability premised on Defendants' "deceptive and misleading statements about the risk of access to and exploitation of consumers' data by the Chinese Government and/or Chinese Communist Party." Compl. ¶ 24. This issue—whether a ***foreign government*** can in fact access and exploit U.S. citizen data—implicates core federal interests in foreign affairs and national security, which are "of unquestionably vital significance to the nation as a whole." *MITE Corp. v. Dixon*, 633 F.2d 486, 491 (7th Cir. 1980), *aff'd on other grounds sub nom. Edgar v. MITE Corp.*, 457 U.S. 624 (1982). Thus, the State's claim necessarily raises substantial federal issues that require a federal forum. *See, e.g.*, *McMahon v. Pres. Airways, Inc.*, 410 F. Supp. 2d 1189, 1201 (M.D. Fla. 2006) (finding federal jurisdiction under *Grable* because "issues involving a government contract and United States military operations are implicated, and substantial contested federal issues are

apparent"); *Scrogin v. Rolls-Royce Corp.*, 2010 WL 3547706, at *3 (D. Conn. Aug. 16, 2010) (similar).

The State tries to downplay this necessary element of its claim, asserting that this case "is simply about whether the Indiana Deceptive Consumer Sales Act allows TikTok to continue lying to Indiana consumers about the truth of what happens with their data." Mot. to Remand at 4. But, as the State concedes, *id.* at 6, to adjudicate the State's claim, the Court would need to evaluate whether there is in fact a risk that the Chinese Government will "access and exploit" TikTok user data "to, among other things, help develop artificial intelligence technologies and assist China in its espionage efforts." Compl. ¶ 107. If there is no such risk, then Defendants cannot be held liable for representing otherwise. Similarly, although the State claims that it is "not asking the courts to 'evaluate' the problems that follow from 'ByteDance's ownership and control of TikTok,'" *id.* at 6, this assertion cannot be squared with the State's allegations, including, for example, that TikTok "misleads Indiana consumers about the risk of the Chinese Government's and/or Communist Party's access to their data by downplaying the significant influence and control that its parent company ByteDance has over TikTok." Compl. ¶ 160. Therefore, the State's complaint implicates the "exercise of state power that touches on foreign relations" in a significant way, and "necessarily raises" federal issues. *See Grable*, 545 U.S. at 312; *Republic of Philippines v. Marcos*, 806 F.2d 344, 352 (2d Cir. 1986) (recognizing that "foreign policy matters, entrusted by the Constitution primarily to the executive branch, have constitutional underpinnings . . . [and] are uniquely federal in nature" (internal quotation marks and citation omitted)).

The State further argues that although a court "would need to evaluate whether Defendants are deceiving Indiana consumers 'about the risks of the Chinese Government's and/or Communist Party's access to their data,'" there is "nothing 'special' about that" because "[c]onsumer-fraud

cases generally involve an alleged deception about a feature of a given product." Mot. to Remand at 6. As the State asserts, "in this case the relevant feature simply happens to be the accessibility of TikTok users' personal information to a foreign government." *Id.* But the fact that the State's claim is pled under state consumer protection law does not immunize it from the *Grable* analysis. Indeed, courts have regularly concluded that state consumer protection claims implicate federal issues that give rise to federal jurisdiction under *Grable*. *See, e.g.*, *In re Zyprexa Prod. Liab. Litig.*, 2008 WL 398378, at *1 (E.D.N.Y. Feb. 12, 2008) ("The resolution of Montana's [state consumer protection] claims necessarily depend on decisive federal questions[.]"); *Peters v. Alaska Tr., LLC*, 305 F. Supp. 3d 1019, 1024-26 (D. Alaska 2018) (concluding that state law consumer protection claim necessarily raised a disputed federal issue, but remanding case because the issue was not substantial).

Federal jurisdiction under *Grable* also exists where, as here, a suit amounts to a "collateral attack" on a federal agency's regulatory decisions. *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 909 (7th Cir. 2007); *Bader Farms, Inc. v. Monsanto Co.*, 2017 WL 633815, at *3 (E.D. Mo. Feb. 16, 2017). The security of U.S. user data against the threat of foreign government access and exploitation fits squarely within CFIUS's scope of authority. *See, e.g.*, U.S. Dep't of Treasury, *Regulations Pertaining to Mergers, Acquisitions, and Takeovers by Foreign Persons*, 73 Fed. Reg. 70702, 70725 (Nov. 21, 2008) (requiring voluntary notices to provide "[a] description and copy of the cyber security plan . . . that will be used to protect against cyber attacks on the operation, design and development of the U.S. business's . . . data storage"); U.S. Dep't of Treasury, *Office of Investment Security; Guidance Concerning the National Security Review Conducted by the Committee on Foreign Investment in the United States*, 73 Fed. Reg. 74567, 74571 (Dec. 8, 2008) (noting "a significant portion of the covered transactions that CFIUS has reviewed" have involved

"data protection" and "Internet security"). The State asks an Indiana state court to upend this federal framework and replace the federal government's decisions with its own evaluation of the security risks posed by the possibility that the Chinese Government could access and exploit U.S. user data. Under these circumstances, federal jurisdiction is necessary to ensure that a state cannot use its laws and courts to supplant or supplement this country's foreign policy. *See, e.g.*, *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 420 (2003); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 366-70 (2000).

The concern that the State's lawsuit will undermine federal policy is not theoretical. Defendants and the federal government, through CFIUS, have been and continue to be engaged in negotiations to address any perceived national security concerns related to Chinese Government access to U.S. user data. *See supra* at 3–6; Status Report, *TikTok Inc. v. CFIUS*, No. 20-1444 (D.C. Cir. Dec. 20, 2022). Yet adjudicating the State's claim would require a reassessment of those same national security questions—inquiries that "turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.[2] *See also* Compl. ¶¶ 2, 8, 18, 21, 24, 45, 48, 61, 63, 102, 132, 141, 160 170, 211, 222, 224; *id.* ¶ 230 (asking the court to evaluate "the risk that [the Chinese Government's] influence poses to consumers' data through ByteDance's ownership and control of TikTok"); *McKay v. City & Cty. of San Francisco*, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016) (finding federal jurisdiction under *Grable* because state-law claims were "tantamount to

---

[2] The State asserts that certain of these federal actions are not relevant because they "have either been withdrawn or are being reconsidered and thus could [not] come into conflict with this case." Mot. to Remand at 7. But the fact that the federal government chose to withdraw certain orders is itself an expression of the government's evaluation of the core U.S. national security and foreign affairs issues raised in the State's complaint.

asking the Court to second guess the validity of the FAA's decision"); *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (similar).

Moreover, contrary to the State's assertions, Mot. to Remand at 7–8, the relief the State seeks may interfere with the federal government's exclusive authority to choose the method for responding to any perceived national security risks posed by covered transactions. The negotiations with CFIUS, in particular, include a contemplated National Security Agreement that would involve a detailed multi-layered approach to safeguarding U.S. user data and providing assurances regarding the content that is consumed by U.S. users. The State's requested injunction could interfere with this robust solution by mandating disclosures that are factually incompatible with this mitigation structure. Such a state court injunction plainly would violate the Supreme Court's admonition that federal power in the field affecting foreign affairs and national security "be left entirely free from local interference." *Hines v. Davidowitz*, 312 U.S. 52, 63 (1941).

Similarly, as explained in Defendants' Notice of Removal, the State's claim also amounts to a collateral attack on the federal court proceedings resulting from President Trump's IEEPA order, which turned in part on whether the government's national security concerns about data access could be adequately addressed through the CFIUS process, and President Biden's decision to withdraw that order. *See TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 76 (D.D.C. 2020); *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 114 (D.D.C. 2020) ("[T]he government has provided ample evidence that China presents a significant national security threat, although the specific evidence of the threat posed by Plaintiffs, as well as whether the prohibitions are the only effective way to address that threat, remains less substantial."). The State's motion to remand entirely ignores this basis for removal, as well as the other regulatory frameworks identified in the Notice of Removal through which the federal government addresses national security risks posed by potential foreign

access to U.S. user data. *See, e.g.*, U.S. Dep't of Commerce, *Securing the Information and Communications Technology and Services Supply Chain*, 86 Fed. Reg. 4909-01 (Jan. 19, 2021) (to be codified at 15 C.F.R. pt. 7); Notice of Removal ¶ 20 & n.2. *See also Pet Quarters, Inc.*, 559 F.3d at 779 (complaint "presents a substantial federal question because it directly implicates actions taken by" a federal agency).

The State's attempt to collaterally attack the federal proceedings is precisely why the State's reliance on *Bennett v. Southwest Airlines Co.*, 484 F.3d 907 (7th Cir. 2007) is misplaced. There, defendants purported to remove a common-law tort suit following an airplane crash "because of the dominant role that federal law plays in air transport." *Id*. at 909. The Seventh Circuit rejected that argument because the complaint did not "revolve[] around any particular disputed issue of federal law." *Id*. The court explained, however, that federal question jurisdiction would have been proper under *Grable* if "the state proceeding amount[ed] to a collateral attack on a federal agency's action." *Id*. That is precisely what the State seeks to do here.

Unable to minimize the disruptive implications of its action for the ongoing administration of federal national security statutes by the federal government, the State resorts to arguing that remand is required because the "Complaint does not cite a single federal statute, regulation, rule, or judicial decision." Mot. to Remand at 2. But the "artful pleading" doctrine "empowers courts to look beneath the face of the complaint . . . to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors, and to act accordingly." *BIW Deceived v. Loc. S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824, 831 (1st Cir. 1997). Therefore "a plaintiff cannot defeat removal by omitting necessary federal questions from a complaint." *LaBelle v. McGonagle*, No. 07–12097, 2008 WL 3842998, at *2 (D. Mass. Aug. 15, 2008) (denying motion to remand under *Grable*).

13

In short, federal issues are central to this case, and removal is therefore proper.

### 2. The Parties "Actually Dispute" The Federal Issues.

The second *Grable* factor—that federal issues are "actually disputed"—is also satisfied here. The parties disagree whether, for example, Defendants' data security practices put U.S. user data at risk of access and exploitation by the Chinese Government and whether "ByteDance has significant connections to, has been significantly influenced by, and cooperates with, the Chinese Government and Communist Party." Compl. ¶ 171. *See also, e.g.*, Compl. ¶¶ 45, 48, 63, 101, 160, 170, 216, 224. Because the State's claim against Defendants depends on its theory that Defendants placed user data at risk of access and exploitation by the Chinese Government, these issues are the "central point of dispute." *Gunn*, 568 U.S. at 259. Given these live disputes about the risk posed to TikTok user data, the State cannot credibly maintain that no federal issue is actually disputed.

The State nonetheless argues that the federal issues necessarily raised by the State's complaint are not "actually disputed" because they are "factual disputes," not questions of law. Mot. to Remand at 7. As an initial matter, whether a federal issue is factual or legal in nature has no bearing on whether it is "disputed" for purposes of the *Grable* analysis, and the State cites nothing to the contrary. *See, e.g.*, *Gunn*, 568 U.S. at 259–60 (acknowledging that a federal issue was "actually disputed" in a legal malpractice suit where a patent owner argued that his attorney should have made a particular argument in support of his patent); *Scrogin*, 2010 WL 3547706, at *3 (federal jurisdiction found under *Grable* "because [the case] involves active-duty military officers, an accident that occurred during a military operation, and an allegedly defective engine that was sold exclusively to the United States Army"). But even if it did, the web of federal laws and regulations that govern the national security risks posed by foreign access to U.S. user data makes clear the legal nature of the issues in dispute. *See, e.g.*, 50 U.S.C. § 4565 (b)(1)(A) (directing

"the President, acting through [CFIUS]," to "determine the effects of the transaction on the national security of the United States").

### 3. The Federal Issues Are Substantial.

The federal issues presented by the State's complaint are also sufficiently "substantial" to warrant federal jurisdiction. "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260, 261–62 (quotation marks omitted). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." 545 U.S. at 312.

Applying this analysis, courts have found federal issues to be sufficiently substantial where they raise "questions [that] involve aspects of . . . complex federal regulatory scheme[s] . . . as to which there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) (quotation marks omitted). Such rulings are especially common where, as here, state-law claims implicate issues related to foreign policy and national security. *See Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 419 (S.D.N.Y. 2020) (acknowledging that a tort suit between Qatar and banks allegedly conspiring with rival foreign states against Qatar involved a substantial federal interest "because it implicates sensitive questions of American foreign policy"); *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1377 (11th Cir. 1998) ("Where a state law action has as a substantial element an issue involving foreign relations or foreign policy matters, federal jurisdiction is

present.");[3] *Marcos*, 806 F.2d at 353 ("[T]here is federal question jurisdiction over actions having important foreign policy implications."); *Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 541 (5th Cir. 1997) (similar).

These cases apply squarely here. The State's claim would require the Court to evaluate the risk the Chinese Government could access and exploit U.S. user data, and the sufficiency of the measures the federal government is negotiating with Defendants to address any such data security concerns. These issues are matters of foreign affairs and national security that are plainly substantial to our federal system. *See Bennett*, 484 F.3d at 910 ("[A] federal forum [is] especially appropriate for contests arising from a federal agency's performance of duties under federal law."); *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 483 F. Supp. 2d 934, 943 (N.D. Cal. 2007) (similar); *cf. Grynberg Prod. Corp. v. British Gas, p.l.c.*, 817 F. Supp. 1338, 1356 (E.D. Tex. 1993) ("[Q]uestions of international relations are almost always substantial.").

The State concedes, as it must, that federal jurisdiction may arise when a federal question "requires a 'uniform' interpretation across numerous cases," but nonetheless argues that this case does not present a "substantial" federal issue because it does not "entail some appreciable measure of risk to the federal sovereign." Mot. to Remand at 8 (citation omitted). That assertion is incompatible with the State's allegation that Defendants have placed U.S. user data at risk of access and exploitation by the Chinese Government. *See, e.g.*, *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 485 (1995) (explaining that the federal government "has a significant interest in protecting the health, safety, and welfare of its citizens"). Moreover, the State's argument cannot be squared with

---

[3] Although the court in *Pacheco de Perez* ultimately held that "the federal common law of foreign relations will not support federal jurisdiction in this case," its conclusion that issues "involving foreign relations or foreign policy matters" are "substantial" is nonetheless instructive here. *Id*. at 1377.

the prohibition on state-level interference with the federal government's approach on issues involving foreign affairs and national security. *See Zschernig v. Miller*, 389 U.S. 429, 436 (1968) ("state involvement in foreign affairs and international relations—matters which the Constitution entrusts solely to the Federal Government—is not sanctioned"). Indeed, the State's complaint takes issue with multiple decisions at the federal level, threatening to upend the federal government's national security and foreign affairs policies and "compromis[ing] the very capacity of the President to speak for the Nation with one voice" in evaluating and addressing foreign threats to U.S. user data. *Garamendi*, 539 U.S. at 424; *id.* at 413 ("There is, of course, no question that at some point an exercise of state power that touches on foreign relations must yield to the National Government's policy, given the 'concern for uniformity in this country's dealings with foreign nations' that animated the Constitution's allocation of the foreign relations power to the National Government in the first place.").

### 4. Federal Jurisdiction Would Protect, Not Disturb, Federalism Principles.

Finally, allowing removal here would not upset the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. To the contrary, federal jurisdiction is fully "consistent with congressional judgment about the sound division of labor between state and federal courts," *id.* at 313, because federal courts are the traditional fora to adjudicate claims that implicate foreign policy and national security considerations. *See Marcos*, 806 F.2d at 353 (recognizing that "foreign policy matters, entrusted by the Constitution primarily to the executive branch, have constitutional underpinnings . . . [and] are uniquely federal in nature" (internal quotation marks and citation omitted)); *Garamendi*, 539 U.S. at 413–14; *Crosby*, 530 U.S. at 373–74.

"Power over external affairs is not shared by the States; it is vested in the national government exclusively." *United States v. Pink*, 315 U.S. 203, 233 (1942). State governments must

yield to the federal government in foreign affairs so that this exclusively national power is "entirely free from local interference." *Hines*, 312 U.S. at 63; *see also Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 49 (1st Cir. 1999) ("[P]ower over foreign affairs is vested exclusively in the federal government."). That is particularly so when, as here, Congress has expressed a preference for resolving such disputes in a federal forum. *See* 50 U.S.C. § 4565(e)(2) (granting the D.C. Circuit original and exclusive jurisdiction to hear challenges to CFIUS proceedings and orders); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1030 (2d Cir. 2014) ("Far from threatening the federal-state balance envisioned by Congress in this area, the exercise of federal jurisdiction here comports with Congress's expressed preference for alleged violations of the Exchange Act, and of rules and regulations promulgated thereunder, to be litigated in a federal forum.").

The State contends that federalism concerns counsel in favor of remand where "a state's Attorney General brings a '*parens patriae* action in state court to enforce its own state consumer protection laws.'" Mot. to Remand at 9. But federal courts in Indiana and across the country commonly hear state consumer-protection claims, including Attorney General enforcement actions. *See, e.g.*, Compl., *State of Indiana v. Startel Communication LLC*, 2021 WL 4803899 (S.D. Ind. Oct. 14, 2021); *FTC v. Am. Future Sys., Inc.*, 2021 WL 1721589, at *1 (E.D. Pa. Apr. 30, 2021); *FTC v. Quincy Bioscience Holding Co., Inc.*, --- F. Supp. 3d. ---, 2022 WL 17905783, at *1 (S.D.N.Y. Dec. 19, 2022). And none of the cases on which the State relies involved the core federal interests in foreign affairs and national security raised by the State's complaint.

\*       \*       \*       \*

Removal pursuant to *Grable* may "rarely result[] in a finding of federal jurisdiction," Mot. to Remand at 4, but "[r]arely differs from never." *Evergreen Square of Cudahy v. Wis. Hous. &*

*Econ. Dev. Auth.*, 776 F.3d 463, 466, 467 (7th Cir. 2015) (internal quotation marks omitted). Here, because the State's claim implicates the "exercise of state power that touches on foreign relations" and national security in a significant way, *Garamendi*, 539 U.S. at 413, this case belongs in federal court. *See Grable*, 545 U.S. at 312.

> **B.      This Court Has Federal-Question Jurisdiction Because The State's Claim Arises, If At All, Under Federal Common Law.**

Removal was also proper because this claim arises under federal common law. Although "[t]here is no federal *general* common law," *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (emphasis added), there remain "some limited areas" in which the governing legal rules will be supplied, not by state law, but by "what has come to be known as 'federal common law.'" *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) (quoting *United States v. Standard Oil of Cal.*, 332 U.S. 301, 308 (1947)). Federal common law governs in a few subject areas in which there are "uniquely federal interests," *Boyle*, 487 U.S. at 504, including "where the basic scheme of the Constitution so demands," *Am. Elec. Power Co.*, 564 U.S. at 421, and where "the interstate or international nature of the controversy makes it inappropriate for state law to control," *Texas Indus.*, 451 U.S. at 641.

Among the subjects which may call for application of federal common law are foreign affairs and national security. Indeed, the Constitution "reflect[s] a concern for uniformity in this country's dealings with foreign nations and indicate[s] a desire to give matters of international significance to the jurisdiction of federal institutions." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 427 n.25 (1964). This uniformity would be undermined if such matters were instead "left to divergent and perhaps parochial . . . interpretations" of the state courts. *Id.* at 425; *see also Republic of Iraq v. First Nat'l City Bank*, 353 F.2d 47, 50 (2d Cir. 1965) ("It is fundamental to our constitutional scheme that in dealing with other nations the country must speak with a united

voice."). Accordingly, the Supreme Court has made clear that federal common law controls disputes, such as this one, that impact the relations between the United States and foreign governments. *See, e.g.*, *Texas Indus.*, 451 U.S. at 641 ("international disputes implicating . . . our relations with foreign nations" are governed by the federal common law of foreign relations).

Similarly, the Constitution vests "plenary and exclusive" control over national security in the federal government. *Tarble's Case*, 80 U.S. (13 Wall.) 397, 408 (1871); *see also Perpich v. Dep't of Defense*, 496 U.S. 334, 353 (1990) ("[S]everal constitutional provisions commit matters of foreign policy and military affairs to the exclusive control of the National Government."). The exclusive authority of Congress and the Executive over national security renders the State's claim in this case necessarily federal in character. *See, e.g.*, *United States v. Pappas*, 94 F.3d 795, 801 (2d Cir. 1996) ("[T]here can be no doubt that a contract for services on matters involving national security is governed by federal law."). Indeed, while nominally brought under state law, the State's complaint—by asking the court to evaluate the risk that the Chinese Government will access and exploit TikTok user data—substantially impacts "uniquely federal interests" in both foreign affairs and national security. *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985); *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988). Therefore, this case "poses the quintessential example of when federal common law is most needed." *City of New York v. Chevron Corp.*, 993 F.3d 81, 92 (2d Cir. 2021) (quoting *Tex. Indus.*, 451 U.S. at 640)).

In response, the State argues that this case should be remanded because federal jurisdiction "derives from federal statutes and is 'limited to those subjects encompassed within a statutory grant of jurisdiction.'" Mot. to Remand at 11 (quoting *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019)). But it is well established that federal courts may fashion federal common law in cases involving areas of "uniquely federal interests" that require a uniform approach, such

as foreign affairs and national security. *See, e.g.*, *Boyle*, 487 U.S. at 506–07; *New SD, Inc. v. Rockwell Intern. Corp.*, 79 F.3d 953, 955 (9th Cir. 1996) ("on government contract matters having to do with national security, state law is totally displaced by federal common law"); *see also Am. Elec. Power Co.*, 564 U.S. at 421 (federal courts may "fill in statutory interstices, and, if necessary, even fashion federal law" (internal quotation marks omitted)). And 28 U.S.C. § 1331 plainly supplies a statutory grant of jurisdiction by assigning federal courts original jurisdiction over "claims founded upon federal common law as well as those of a statutory origin." *Nat'l Farmers*, 471 U.S. at 850; *see also Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123, 126 (2d Cir. 1999) ("It is beyond dispute that if federal common law governs a case, that case presents a federal question within the subject matter jurisdiction of the federal courts."). Moreover, although Congress sometimes affirmatively directs the application of federal common law, "[m]ore often, federal common law develops when courts must consider federal questions that are not answered by statutes." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 855, 856 (9th Cir. 2012) ("If Congress has addressed a federal issue by statute, then there is no gap for federal common law to fill.").

The State further argues that federal common law does not apply because "[n]o act of the Chinese Government is at issue" in this case. Mot. to Remand at 12. But the application of federal common law rests not on the conduct of a foreign sovereign, but on a judicial determination that the issue in the case is so distinctively federal in nature that application of state law would risk impairing uniquely federal interests. *Boyle*, 487 U.S. at 506–07. Similarly, while the State argues that a claim cannot arise under federal common law unless Defendants "identif[y] a rule of decision," Mot. to Remand at 13, the Seventh Circuit has recognized that "federal courts regularly create federal common law . . . to fill the gap" in federal statutes. *Beach*, 382 F.3d at 659 (citation

omitted). Thus, to the extent that there is a gap in the federal statutory scheme to address perceived threats of foreign access to and exploitation of U.S. user data (which Defendants do not believe exists), federal common law should fill that gap, not state law. *See, e.g.*, *City of New York*, 993 F.3d at 89–90 ("federal common law functions much like legal duct tape—it is a 'necessary expedient' that permits federal courts to address issues of national concern until Congress provides a more permanent solution").

## IV.   CONCLUSION

For these reasons, the court should deny the State's Motion to Remand.

Dated: February 17, 2023

Respectfully Submitted,

By */s/  Daniel E. Pulliam*
Andrea Roberts Pierson, #18435-49
Daniel E. Pulliam, #29439-49
Nicholas B. Alford, #31867-49
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, IN 46204
Tel: (317) 237-0300
Andrea.Pierson@faegredrinker.com
Daniel.Pulliam@faegredrinker.com
Nicholas.Alford@faegredrinker.com

John E. Hall*
Alexander A. Berengaut*
Megan A. Crowley*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel: (202) 662-6000
Fax: (202) 778-6000
*Admitted pro hac vice*

*Counsel for Defendants TikTok Inc. and ByteDance Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 17, 2023, a copy of the foregoing Opposition to Remand was filed electronically. Notice of this filing will be sent to the below parties by operation of the Court's electronic filing system.

Scott L. Barnhart (Attorney No. 25474-82)
Cory Voight (Attorney No. 23180-49)
Betsy M. DeNardi (Attorney No. 23856-71)
Office of Attorney General
Indiana Gov't Center South
302 West Washington St.
5th Floor
Indianapolis, IN 46204
Tel: (317) 234-7132
Fax: (317) 223-7979

David H. Thompson
Pete Patterson
Brian W. Barnes
Megan M. Wold
DeLisa Ragsdale
John Tienken
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601

*Counsel for Plaintiff, State of Indiana*

*/s/ Daniel E. Pulliam*

23