**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| STATE OF INDIANA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Cause No. 1:23-CV-13-HAB |
| | ) |
| TIKTOK, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This case was initiated by a fifty-one page, two hundred thirty-four paragraph, one hundred forty-one footnote complaint. Only fifteen paragraphs and two pages address Indiana's actual legal claim.

Had Indiana filed short and plain statement of its claim, this case would have stayed in the Allen County, Indiana, Superior Court where it was filed. But since more than 90% of the complaint was devoted to irrelevant posturing, Defendants removed the case under 28 U.S.C. §§ 1441(a) and 1331, arguing federal question jurisdiction under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308 (2005), or that the case is governed by federal common law. (ECF No. 1).

Indiana now moves for remand. (ECF No. 18). That motion has been fully briefed (ECF Nos. 19, 33), and the Court held oral argument at Defendants' request. (ECF No. 20). The remand motion is now ready for ruling.

**I.      Factual Allegations**

The thrust of Indiana's complaint is that Defendants, in their disclosures to Indiana consumers, fail to disclose "the truth that [users'] data may be shared with individuals and entities

subject to Chinese laws." (ECF No. 1 at 4). That one sentence thesis statement is then stretched into a work longer than Kafka's *The Metamorphosis*. The complaint describes the breadth of information gathered by the TikTok app, discusses—at length—the connections between TikTok's parent company, ByteDance Ltd. ("ByteDance") and the Chinese Government, and then goes into detail explaining how, in Indiana's view, all that gathered information can—and presumably is— accessed by China and the Communist Party. On page 47, Indiana finally states its one claim: that Defendants have violated Indiana's Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5, *et seq.*, "by deceiving and misleading Indiana consumers . . . about the risk of the Chinese Government and Communist Party accessing and exploiting their data." (ECF No. 1 at 47).

## II.   Legal Analysis

### A.   *Motion to Remand Standard*

Under 28 U.S.C. § 1441, removal is proper over any action that could have been filed originally in federal court. However, if the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to 28 U.S.C. § 1447(c). Courts presume that a plaintiff's choice of forum is proper and valid and resolve all doubts regarding jurisdiction in favor of remand. *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). Thus, the party seeking removal bears the burden of establishing jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Doe*, 985 F.2d at 911.

### B.   *Federal Question Jurisdiction is Inappropriate Under* Grable

There is only one claim in Indiana's complaint; it is asserted under Indiana statute. And since Indiana is a party, diversity jurisdiction is impossible. *Indiana Port Com'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 109 (7th Cir. 1983) ("It is well-settled that a state is not a citizen for diversity

purposes.") (citations and quotations omitted). The basis for removal, then, is not immediately obvious from the face of the complaint.

But Defendants assert that Indiana's state-law claim is really a federal claim. *Grable* held that a claim nominally resting on state law may "arise under" federal law, permitting removal under § 1441(a), when it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Defendants claim that a federal issue is necessarily stated and disputed here; "the Chinese Government's access to TikTok user data and ability to exploit that user data." (ECF No. 19 at 12).

Defendants point the Court to several district court cases from other circuits, but the Court finds that reference to those cases is unnecessary. Instead, the resolution of Indiana's motion is controlled by *Bennett v. Sw. Airlines Co.*, 484 F.3d 907 (7th Cir. 2007). There, state tort suits arising out of an airplane accident were removed to federal court under *Grable*. The district court denied a motion to remand, and an interlocutory appeal was taken. On appeal, the defendants argued that "plaintiffs' claims ar[o]se under federal law because federal aviation standards play a major role in a claim that Southwest (as operator of the flight), Boeing (as manufacturer of the airframe), or Chicago (as operator of the airport) acted negligently." *Id*. at 908. Thus, they claimed, federal jurisdiction was appropriate under *Grable*.

The Seventh Circuit rejected this argument.

> For all we can see, everything will depend on a fact-bound question such as whether the pilots should have executed a missed approach or, having elected to land, exercised adequate diligence in activating the thrust reversers; whether Boeing should have told air carriers not to count on thrust reversers when calculating how much runway they need; or whether Chicago should have closed the airport because of bad weather. The meaning of federal statutes and regulations may play little or no role. As defendants (and the district court) saw things, however, this does not matter: all suits about commercial air travel belong in federal court because the

3

> national government is the principal source of rules about safe air transportation, and uniform application of these norms is desirable. So put, the argument would extend *Grable* and the arising-under jurisdiction well beyond the scope the Justices are willing to tolerate.

*Id*. at 909. The Seventh Circuit imagined instances when federal jurisdiction would have been appropriate—a Federal Tort Claims Act claim against the air traffic controllers, for instance—but noted that the case as presented was "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law." *Id*. at 910. That kind of case does not trigger federal question jurisdiction under *Grable*.

*Bennett* cites two Supreme Court cases, both of which demonstrate the limited nature of this exception for federal question jurisdiction. The first is *Grable* itself. There, the IRS seized property to satisfy a tax lien. Several years later, the tax debtor brought a state-law quiet title action against the new owner, claiming that the IRS had failed to strictly comply with statutory notice requirements when it seized the property. The case was removed to federal court where the district court declined to remand, finding that the "claim does pose a significant question of federal law." *Grable*, 545 U.S. at 311. The Supreme Court accepted the case to answer the jurisdictional question alone.

The Supreme Court had little trouble concluding that federal jurisdiction was appropriate. The predominance of federal law and the rarity of the issues presented convinced the Supreme Court that jurisdiction under § 1331 was appropriate.

> Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case. The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court . . . Finally, because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor.

4

*Id*. at 315.

The second was *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006). The plaintiff there, which administered a program of health insurance for federal employees, sued in federal court seeking to recover from an insured who had settled a tort claim and failed to turn over any of the proceeds as the policy required. The theory was that because the policy's terms, including the requirement of reimbursement, had been prescribed by federal regulation, the claim for reimbursement itself arose under federal law. The Supreme Court held, however, that the claim arose under the contract and that the influence of federal law on the outcome of a contract (or tort) suit is not enough to support the arising-under jurisdiction.

Rejecting the idea that *Grable* brought all cases involving an important federal issue within § 1331's reach, the Supreme Court stated:

> Whether Grable received notice adequate under [26 U.S.C.] § 6335(a), we observed, was "an essential element of [Grable's] quiet title claim"; indeed, "it appear[ed] to be the only . . . issue contested in the case." This case is poles apart from *Grable*. The dispute there centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as "substantial," and its resolution was both dispositive of the case and would be controlling in numerous other cases. Here, the reimbursement claim was triggered, not by the action of any federal department, agency, or service, but by the settlement of a personal-injury action launched in state court, and the bottom-line practical issue is the share of that settlement properly payable to Empire. *Grable* presented a nearly "pure issue of law," one "that could be settled once and for all and thereafter would govern numerous tax sale cases." In contrast, Empire's reimbursement claim . . . is fact-bound and situation-specific . . .. In sum, *Grable* emphasized that it takes more than a federal element "to open the 'arising under' door." This case cannot be squeezed into the slim category *Grable* exemplifies.

*McVeigh*, 547 U.S. at 700-01 (cleaned up).

The Court sees a clear line in the case law. Cases that require a district court to decide questions of federal law, even if pleaded as a state-law claim, are removable under *Grable*. Cases that only raise federal issues, whether they be air travel or federal benefits, are not.

After reviewing the briefs and listening to oral argument, the Court has trouble identifying *any* question of federal law that would need to be decided here. Defendants point to some of the more hyperbolic allegations in the complaint to argue that the Court would need to determine whether the Chinese Government will "access and exploit" user information to "help develop artificial intelligence technologies and assist China in its espionage efforts." (ECF No. 19 at 15). Conceding that these allegations are in the complaint, the Court does not agree that potential espionage has anything to do with Indiana's legal claim. Instead, Indiana must prove that Defendants committed "an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction" as that is defined in Indiana Code. *See* Ind. Code § 24-5-0.5-3(a). And assuming, without finding, that this case involves a consumer transaction, the Court understands Indiana's claim to be that Defendants mislead Indiana consumers about whether their information is accessible by Chinese actors. Stated another way, the claim is *whether* the information is accessible, not *what happens* to the data after it is accessed. The latter may implicate federal law, but the former is a straightforward factual question to be answered in the context of a state statute.

Alternatively, Defendants argue that federal jurisdiction is appropriate under *Grable* because this case is a "collateral attack" on the work of the Committee on Foreign Investment in the United States ("CFIUS"). According to Defendants, CFIUS and Defendants have been involved in both negotiations and litigation for several years over the matters raised in the complaint. Defendants argue that they "have proposed a number of strategies to mitigate any purported national security risks around TikTok's U.S. user data. Indeed, Defendants have already begun the implementation of these solutions, which include isolating U.S. user data under the control of a special U.S. subsidiary and in the cloud environment maintained by Oracle

Corporation. Defendants remain in discussions with the U.S. government regarding this implementation and other safeguards." (ECF No. 19 at 10).

First, there is no "collateral attack" here. "A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). That's what happened in *Grable*; the quiet title action was a collateral attack on the IRS' move to seize the subject property. Here, there is no action of CFIUS that is being attacked. Rather, as Defendants describe it, there hasn't even been an action by CFIUS to attack. At worst, Indiana could be getting out in front of CFIUS, but nothing in *Grable* or any other case law cited by Defendants suggests that proactive litigation can grant jurisdiction in a federal forum.

But more importantly, the Court fails to see how anything determined here could affect the outcome of the CFIUS proceedings. As described by Defendants, the CFIUS proceedings are forward-looking. That is, they will address how Defendants can mitigate national security issues going forward. The complaint, on the other hand, seeks to address alleged misrepresentations that have already occurred. A judicial determination that Defendants failed to make a complete disclosure of their data handling practices, or that they did fully disclose those practices, will be neither here nor there to CFIUS' evaluation of the privacy risks posed by the TikTok app.

The Court does not fault Defendants for their jurisdictional maneuvering. As stressed in the introduction, Defendants' arguments are given credibility by Indiana's choice to plead matters well-beyond its legal claim. But when one wades through the political posturing and finds that legal claim, the inescapable conclusion is that the claim rises and falls on matters particular to state law. The federal intrigue interjected by Indiana may interest its intended audience—one beyond

the courthouse walls—but it is irrelevant to the determination of this case. There is no federal issue on which to base a *Grable* analysis, and jurisdiction cannot lie on that ground.

**C.**      ***Federal Common Law Does not Confer Jurisdiction***

Because the Court finds no fundamental federal issue here, the resolution of Defendants' federal common law argument is straightforward.

> [A]bsent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases. In these instances, our federal system does not permit the controversy to be resolved under state law, either because the authority and duties of the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control.

*Tex. Indus., Inc. v. Radcliff Maters., Inc.*, 451 U.S. 630, 641 (1981). For the reasons above, the Court does not believe that the adequacy of Defendants' data privacy disclosures implicates any of the "narrow areas" in which federal common law exists. Instead, this is a matter of state law, and should be determined by a state court.

**III.    Conclusion**

For these reasons, Indiana's motion to remand (ECF No. 18) is GRANTED and this case is REMANDED to the Allen County, Indiana, Superior Court.

SO ORDERED on May 23, 2023.

 *s/ Holly A. Brady*_____
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

8